# Exhibit C

# IN THE COURT OF COMMON PLEAS
# FOR LACKAWANNA COUNTY

| | |
|---|---|
| Jane Doe,<br>*Individually and on behalf of all others similarly situated,*<br>   Plaintiff,<br><br>vs.<br><br>Lehigh Valley Health Network, Inc.<br><br>   Defendant. | Court File No.: 23-CV-1149<br><br>**PLAINTIFF DOE'S MOTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION WITHOUT HEARING** |

## INTRODUCTION

Plaintiff Jane Doe ("Plaintiff") and the putative Class Members seek a preliminary injunction without hearing pursuant to Pa. R. Civ. P. 1531 enjoining Defendant Lehigh Valley Health Network, Inc. ("LVHN") to meet the ransom demand of the data hackers known as, ALPHV in order to prevent the release of further nude pictures and private health and personal information of the Plaintiff and the Class Members. The additional release of such private, personal, and sensitive information for public consumption constitutes immediate an irreparable harm that warrants such an injunction. *See Pennsylvania State Educ. Ass'n ex rel. Wilson v. Com., Dept. of Community and Economic Development, Office of Open Records*, 981 A.2d 383 (Pa. Cmwlth. 2009). At bottom, our privacy is sacrosanct and is a pillar of our American Civil Liberties. Once an individual's right to privacy is breached, it cannot be undone. The Court should act to stop others from befalling the same fate as Plaintiff Doe.

In addition, Plaintiff seeks an order requiring LVHN to notify all those who have are believed to have been a victim of the data breach so they can immediately take steps to protect themselves. The Pennsylvania Legislature passed the Breach of Personal Information Notification Act (Data Breach Act), 73 P.S. §§ 2301-2329. Under the Data Breach Act, the

1

Legislature has imposed a duty on entities, like LVHN, to provide notice of a data breach, 73 P.S. § 2303. LVHN should be ordered to comply with its legal requirements and provide notice to all those reasonably believed to be impacted.

## **BACKGROUND**

Plaintiff and the putative Class Members are individuals who were subject to the Data Breach incident at LVHN which occurred on or around January 8, 2023, which LVHN discovered on our around February 6, 2023. In the underlying class action complaint, Plaintiff alleges that LVHN failed to properly secure and safeguard the private and sensitive information it collected, maintained, stored, analyzed, and used in its ordinary course of business. Class Action Complaint, Dkt. No. 1, at ¶ 9.

LVHN alleges that it detected unauthorized activity on its IT system and, upon subsequent investigation, discovered that notorious cyber-hackers ALPHV, also known as BlackCat, were responsible for the attack. *Id.*, at ¶ 22. LVHN publicly disclosed that it was the victim of ALPHV's cyberattack on February 20, 2023, and stated that it would "provide notices as required to those whose information was involved." *Id.*, at ¶ 24.

ALPHV posted a public message to LVHN on March 4, 2023, warning that if LVHN did not meet its ransom demands, ALPHV would publicly post stolen data. This message specifically referenced nude photos, which were taken of cancer patients while they were receiving treatment at LVHN. *Id.*, at ¶ 26. When LVHN refused the ransom demand, ALPHV posted nude photographs of Plaintiff and other cancer patients onto the dark web. *Id.*, at ¶ 27.

LVHN's Vice President of Compliance, Mary Ann LaRock, contacted Plaintiff telephonically on March 6, 2023, and advised that nude images of Plaintiff taken during radiation treatment were posted on the dark web by ALPHV and that other protected health information

2

("PHI") and personally identifiable information ("PII") had also been stolen in the data breach. *Id.*, at ¶ 28. Plaintiff did not know that LVHN stored nude images of her on its computer network until this time. CAC, at ¶ 25.

On March 10, 2023, after LVHN continued to refuse to meet ALPHV's ransom demands, ALPHV uploaded an additional 132 gigabyte file onto the dark web. This file contained additional patient data and nude photos. ALPHV claims to have 1 terabyte of data from LVHN's network and promises to continue leaking patient data and photographs until LVHN pays the ransom. *Id.*, at ¶ 30. An image from the ALPHV website showing the post of 132 GB of data on the dark web and warning about additional postings of the 1 TB of data.



Plaintiff filed this class action on behalf of herself and all persons who are identified to be subject of the Data Breach incident at LVHN that was discovered on or around February 5, 2023. Dkt. No. 1, at ¶ 75. Now, Plaintiff, on behalf of herself and all other similarly situated, brings the

instant Motion for a preliminary injunction enjoining Defendant from continuing to neglect its duty to Plaintiff and Class Members to protect their PHI and PII and require Defendant to meet the ransom demands of ALPHV in order to prevent further release of this information, and specifically the nude photographs obtained through the Data Breach. Plaintiff also requests the Court order LVHN to immediately notify all victims of the breach as required by the Data Breach Act.

## **LEGAL STANDARD**

A party seeking a preliminary injunction must satisfy five factors. The movant must show (1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; (2) that greater injury would result from refusing an injunction than from granting it and that the injunction will not substantially harm other interested parties; (3) that the preliminary injunction will restore the parties to their status quo as it existed prior to the alleged wrongful conduct; (4) that the moving party it is likely to prevail on the merits; (5) that the injunction it seeks is reasonably suited to abate the offending activity and (6) that the preliminary injunction will not adversely affect the public interest. *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*, 573 Pa. 637, 646–47, 828 A.2d 995, 1001 (2003).

Under Pa. R. Civ. P. 1531, "[a] court shall issue a preliminary or special injunction only after written notice and hearing unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special injunction without a hearing or without notice." Pa. R. Civ. P. 1531(a) (2003). In determining whether a preliminary injunction should be granted and whether notice or a hearing should be required, the court may act on the basis of the pleadings. *Id.* Pennsylvania courts have held that a preliminary injunction without hearing is the

"functional equivalent" to a temporary restraining order. *Greater Nanticoke Area Educ. Ass'n v. Greater Nanticoke Area Sch. Dist.*, 938 A.2d 1177, 1181–82 (Pa. Commw. Ct. 2007) (citing *Bloomingdale's by Mail Ltd. v. Dep't of Revenue*, 513 Pa. 149, 153, 518 A.2d 1203, 1205 n. 3 (Pa. 1986); *E. Stroudsburg Univ. v. Hubbard*, 591 A.2d 1181 (Pa. Commw. Ct. 1991)).

## ARGUMENT

### I. PLAINTIFF AND CLASS MEMBERS WILL SUFFER IMMEDIATE AND IRREPARABLE HARM IF A PRELIMINARY INJUNCTION IS NOT GRANTED

The first factor that courts consider in determining whether a preliminary injunction should be granted is whether the relief being sought is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by money damages. *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mountain*, 573 Pa. at 646–47. In this case, Plaintiff and Class Members are suffering and will continue to suffer immediate irreparable harm if the Defendant is not ordered to pay the ransom demand to prevent further release of information. ALPHV has promised to release more information, and specifically more nude photos, on a weekly basis until LVHN meets the ransom demands. As demonstrated from the multiple releases of information, the potential for increased harm is ongoing.

To show that the immediate and irreparable harm cannot be compensated by money damages, Plaintiff and Class Members must present "concrete evidence demonstrating actual proof of irreparable harm" which cannot be solely based on "speculation and hypothesis" and must be "irreversible". *Greenmore, Inc. v. Burchick Const. Co., Inc.*, 908 A.2d 310, 314 (Pa. Super. Ct. 2006) (internal quotations and citations omitted). In *Sovereign Bank v. Harper*, the Superior Court of Pennsylvania acknowledged the Pennsylvania Supreme Court's approval of an injunction that the harm would be irreparable "because the extent of the injury was inherently

unascertainable, and hence incapable of being fully compensated by money damage." 674 A.2d 1085, 1093 (Pa. Super. Ct. 1996).

The release of nude photographs, along with PHI and PII, cannot be adequately compensated by money damages. Once data is release to the dark web, it cannot be removed.[1] Data breach victims must resort to other costly methods of trying to protect themselves, but, as the information will still be accessible to dark web users, they live under the life-long threat of malicious use of that information. It is truly an irreversible harm with unbounded consequences.

But this is not simply a case in which social security numbers or dates of birth are being disclosed, which in and of itself, causes irreparable harm. This is a case in which thousands of nude photographs of patients who are undergoing cancer treatment are being released onto the dark web. Often, the patients were not even aware the photos were being taken. So, in addition to the time-consuming and costly efforts to mitigate the actual and potential impact on their financial well-being, the Plaintiff and Class Members will suffer embarrassment and humiliation by having these nude images of themselves taken at a time when they were most vulnerable posted on the internet. Like the PHI and PII released to the dark web, these photographs cannot be removed. And now, they must continue to fear that additional photos and information will also be posted because the Defendant refuses to pay the ransom to protect their patients' private information. Whether or not the continued disclosures of these deeply personal photographs as well as their PHI and PII are posted on the web can be prevented by issuing the requested injunction.

Plaintiff also alleges that by failing to use reasonable measure to protect Plaintiff's and Class Members' PII and PHI from further disclosure by paying the ransom, Defendant has

---

[1] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA, Mar. 19, 2019, https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

violated section 5 of the FTC Act, 15 U.S.C. § 45, and violated HIPAA, 45 C.F.R. § 160.102, by failing to adhere to and meet the requirement of 45 CFR §§ 164.308. 164.310, 164.312, 164.314, 164.316. Dkt. No. 1, at ¶¶ 101–115. "The violation of a statute constitutes immediate and irreparable harm and issuing a preliminary injunction to avoid such a violation is justified." *Central Dauphin Educ. Ass'n v. Central Dauphin School Dist.*, 792 A.2d 691, 698 (Pa. Commw. Ct. 2001) (quoting *Public Utility Commission v. Israel*, 356 Pa. 400, 406, 52 A.2d 317, 321 (Pa. 1947)).

## II. GREATER INJURY WOULD RESULT IF THE COURT WERE TO NOT GRANT THE INJUNCTION THAN IF THE INJUNCTION WERE GRANTED

The Court should also weigh whether any injury that Defendant may suffer as a result of the injunction would be greatly outweighed by the injury to Plaintiff and Class Members if the injunction was not granted. *See Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mountain*, 573 Pa. at 647. This injunction would require LVHN to pay ALPHV the demanded ransom. While this may cause some financial injury to Defendants (which may be recoverable through insurance in any event), this harm is overshadowed by the injuries to Plaintiffs and Class Members that would result from further releases of PII, PHI, and nude photographs.

Courts have repeatedly found that the injuries resulting from the nonconsensual dissemination of nude images to be substantial. In *State v. VanBuren*, the Supreme Court of Vermont found that the state had a compelling interest in criminalizing nonconsensual pornography, in part due to the degree of harm to victims. 214 A.3d 791, 810–11 (Vt. 2019) (discussing potential harm to employment, potential harassment, extortion, unwelcome sexual attention and threats of violence, and risk of extreme emotional distress and suicidal ideation). The Supreme Court of Indiana heavily cited the *VanBuren* decision in finding that a similar statute in Indiana was also not a violation of the First Amendment. *State v. Katz*, 179 N.E.3d

7

431, 456–58 (Ind. 2022). In its examination of a similar Minnesota statute, the Supreme Court of Minnesota wrote that "[t]hose who are unwillingly exposed to their friends, family, bosses, co-workers, teachers, fellow students, or random strangers on the internet are often deeply and permanently scarred by the experience. Victims suffer from post-traumatic stress disorder, anxiety, depression, despair, loneliness, alcoholism, drug abuse, and significant losses in self-esteem, confidence, and trust." *State v. Casillas*, 952 N.W.2d 629 (Minn. 2020).

Any injury to LVHN is quantifiable—the amount paid to satisfy the ransom. The injuries to Plaintiff and Class Members have the potential to be personally and economically devastating.

## III. GRANTING THE INJUNCTION WOULD RESTORE THE STATUS QUO

The Court should also weigh whether the injunction will restore the parties to their status quo as it existed before the alleged wrongful conduct. *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mountain*, 573 Pa. at 647. "The relevant standard requires that an injunction must address the status quo as it existed between the parties before the event that gave rise to the lawsuit, not to the situation as it existed after the alleged wrongful act but before entry of the injunction." *Abrogi v. Reber*, 932 A.D. 969, 979 (Pa. Super. Ct. 2007) (citing *Anchel v. Shea*, 762 A.2d 346, 351 (Pa. Super. Ct. 2000)).

If the Court grants the injunction, Plaintiff and the other putative Class Members will be restored to (as best as able) to the pre-conduct status in that they will no longer have to worry about what additional private information may be put on the dark web. And, although Defendant will be required to pay the ransom in order to protect Plaintiff's and Class Members' PHI, PII, and other sensitive information it stored on its network, it also would be restored to its pre-conduct status in that it would once again be taking affirmative steps to prevent further dissemination of Plaintiff and Class Members' PHI and PII, as it is required by law to do.

8

## IV. PLAINTIFF AND CLASS MEMBERS HAVE A CLEAR RIGHT TO RELIEF AND ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR CLAIMS

The Court must also look at whether the Plaintiff and Class are likely to prevail on the merits of their claims. *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mountain*, 573 Pa. at 647. "The party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits." *Id.* When establishing a clear right to relief, "the party seeking an injunction need not prove the merits of the underlying claim, but need only demonstrate that substantial legal questions must be resolved to determine the rights of the parties." *SEIU Healthcare Pennsylvania v. Com.*, 628 Pa. 573, 590–91, 104 A.33 495, 506 (2014).

Plaintiff and Class Members have a strong likelihood of success on the merits. Plaintiff has brought claims under Negligence, both General Negligence and Negligence Per Se, in violation of 15 U.S.C. §45 and 45 C.F.R. §160.102. CAC, at ¶¶ 88–115. Plaintiff has also brought a claim for Breach of Fiduciary Duty (*see* CAC, at ¶¶ 116–121); Breach of an Implied Contract (*see* CAC, at ¶¶ 122–134); Breach of Confidence (*see* CAC, at ¶¶ 125–146); and Publicity Given to Private Life (*see* CAC, at ¶¶ 147–151).

In order to prove General Negligence, Plaintiff must show "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Grossman v. Barke*, 868 A.2d 561, 566 (Pa. Super. Ct. 2005). Plaintiff has alleged that LVHN owed a duty of care to Plaintiff and Class Members to protect their sensitive PII and PHI and that LVHN breached its duty by failing to implement reasonable data security measures. Dkt. No. 1, at ¶¶ 92–97. Plaintiff has alleged that if not for LVHN's breach of duty, her and Class Members' PHI and PII would not have been accessed by unauthorized persons. *Id.*, at ¶ 98. Finally, Plaintiff has alleged that she and Class Members have

suffered actual damages as a result, including, but not limited to ongoing and immediate threat of identity theft crimes; out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or fraud; and credit, debit, and financial monitoring. *Id.*, at ¶ 99.

In order to prove Negligence Per Se in violation of 15 U.S.C. § 45 and 45 C.F.R. § 160.102, Plaintiff must show "(1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally; (2) The statute or regulation must clearly apply to the conduct of the defendant; (3) The defendant must violate the statute or regulation; (4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries." *Ramalingam v. Keller Williams Realty Group, Inc.*, 121 A.3d 1034, 1042–43 (Pa. Super. Ct. 2015). For the Negligence Per Se claim relating to 15 U.S.C. § 45, Section 5 of the FTC Act, Plaintiff has alleged that she and Class Members are within the class of persons Section 5 of the FTC Act was intended to protect. Dkt. No. 1, at ¶ 104. She has also alleged that Section 5 of the FTC Act, and its interpretation and enforcement by the FTC, applies to the conduct of LVHN regarding Plaintiff's and Class Members' PHI and PII. *Id.*, at ¶ 101. Plaintiff further alleges that by failing to protect her and Class Members' PHI and PII, LVHN has violated Section 5 of the FTC Act and that those violations are the direct and proximate cause of the harm suffered by Plaintiff and Class Members. *Id.*, at ¶¶ 102, 106.

Regarding the Negligence Per Se claim relating to HIPAA, 45 C.F.R. § 160.102, Plaintiff has alleged that she and Class Members are within the class of persons that HIPAA was designed to protect. *Id.*, at ¶ 114. Plaintiff has also alleged the LVHN was covered by HIPAA as a healthcare provider and was therefore obligated to comply with all rules and regulations under 45 C.F.R. Parts 160 and 164. *Id.*, at ¶¶ 108–111. Plaintiff alleged that LVHN violated HIPAA by failing to use reasonable measures to protect Plaintiff and Class Members' PHI and PII. *Id.*,, at

10

¶¶ 112–113. Finally, Plaintiff has alleged that LVHN's failure to protect her and Class Members' PHI and PII as required under HIPAA directly and proximately cause harm to her and Class Members. *Id.*, at ¶ 115.

In order to prove Breach of Fiduciary Duty, Plaintiff must show (1) the existence of a fiduciary relationship between her and LVHN, (2) that LVHN negligently or intentionally failed to act in good faith and solely for her benefit, and (3) that Plaintiff suffered an injury caused by LVHN's breach of fiduciary duty. *Snyder v. Crusader Servicing Corporation*, 231 A.3d 20 (Pa. Super. Ct. 2020). Plaintiff has alleged that a fiduciary relationship existed between her and LVHN where LVHN owed Plaintiff a fiduciary duty. Dkt. No. 1, at ¶ 118. Plaintiff has further alleged that LVHN negligently failed to act in good faith and failed to protect Plaintiff's and Class Members' sensitive PHI and PII. *Id.*, at ¶ 119. Ultimately, Plaintiff alleged, this breach caused Plaintiff and Class Members injury. *Id.*, at ¶ 120.

In order to prove Breach of Implied Contract, Plaintiff must show "[(1)] existence of a contract (including its essential terms), [(2)] a breach of duty imposed by the contract and [(3)] resultant damages." *Young v. Wetzel*, 260 A.3d 281, 290 (Pa. Commw. Ct. 2021). For a contract to exist, there must be (1) an offer, (2) acceptance of the offer, and (3) consideration. *Hatbob v. Brown*, 575 A.2d 607, 613 (Pa. Super. Ct. 1990). Plaintiff has alleged the existence of a contract where LVHN offered to provide medical goods and services and Plaintiff and Class Members accepted that offer in exchange for providing PHI and PII and paying for the medical good and services. Dkt. No. 1, at ¶¶ 123–126. Plaintiff alleges that LVHN breached that contact by failing to protect her and Class Members' PHI and PII and failing to comply with industry standard and legal obligations incorporated into the agreement through the Privacy Policy. *Id.*, at ¶ 128.

11

Finally, Plaintiff has alleged that she and Class Members have suffered damages as a result of LVHN's breach of contract. *Id.*, at ¶ 134.

In order to prove Breach of Confidence, Plaintiff must show "(1) the plaintiff conveyed 'confidential and novel information' to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding." *Burns v. Erving*, 810 F. Supp. 2d 1167, 1172 (D. Nev. 2011). Plaintiff has alleged that she and Class Members conveyed intimate PHI and PII to LVHN. Dkt. No. 1, at ¶¶ 138–139. Plaintiff has further alleged that when she and Class Members conveyed this information to LVHN, LVHN knew that this information was being disclosed in confidence, and there was mutual explicit and implicit understanding that this information was to be kept confidential. *Id.*, at ¶¶ 136–140. Plaintiff has also alleged that LVHN failed to protect her and Class Members' data and a disclosure of that information occurred. *Id.*, at ¶ 141.

In order to prove the final claim of Publicity Given to Private Life, Plaintiff must show "(1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person and (4) is not of legitimate concern to the public." *Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1384 (Pa. Super. Ct. 1984). For the purposes of this tort, publicity "requires that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Burger v. Blair Med. Assocs., Inc.*, 964 A.2d 374, 378 (Pa. 2009). Here, Plaintiff alleges that publicity was given to her and Class Members' private facts by LVHN's failure to employ adequate and reasonable security measures to prevent discloser. *Id.*, at ¶ 149–150. The private facts here, including Social Security numbers, financial information, PHI, and photographs of Plaintiff and

Class Members in states of undress are highly offensive to a reasonable person and not a legitimate concern to the public.

It is clear from the facts as alleged, that Plaintiff will have a high likelihood of success on the merits and as such this factor weighs in favor of granting the preliminary injunction sought.

## V. ENJOINING DEFENDANT TO MEET THE RANSOM DEMANDS IS REASONABLY SUITED TO ABATE THE OFFENDING ACTIVITY

The fifth factor the Court should consider is whether the injunction is reasonably suited to abate the offending activity. *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mountain*, 573 Pa. at 647. Pennsylvania courts have found a range of injunctions to be reasonably suited to abating offending activity. In *SEIU Healthcare Pennsylvania v. Commonwealth*, the Supreme Court of Pennsylvania reversed the order of the Commonwealth Court who denied a preliminary injunction to prevent the closure of twenty-six State Health Centers and the subsequent furlough of nurse consultants employed at the State Health Centers. 104 A.3d 495 (Pa. 2014). Regarding whether the injunction was reasonably suited, the Court found that its "issuance of a preliminary injunction instructing the Commonwealth to cease reducing the number of Centers, reestablish Centers in counties in which they have been unlawfully closed, cease reducing the level of public health services, and restore the level of public health services to that which existed on July 1, 1995, is reasonably tailored to abate the Executive Branch's offending conduct." *Id.* at 509. *See also Kessler v. Broder*, 851 A.2d 944 (Pa. Super. Ct. 2004) (finding that a preliminary injunction requiring majority shareholders of radiology corporations to allocate one-third of the MRI reads to minority shareholders to be reasonably suited).

"Pennsylvania courts sitting in equity have jurisdiction to prevent the continuance of acts prejudicial to the interest of individual rights...." *The York Group, Inc. v. Yorktowne Caskets, Inc.*, 924 A.2d 1234, 1244 (Pa. Super. Ct. 2007). In this case, that is exactly what the injunction

13

will do. By requiring the Defendants to pay the ransom, this Court would be preventing the further release of Plaintiff and Class Members PHI and PII, including nude images.

Payment of the ransom demand is reasonably suited to abate the threat of further dissemination of PHI and PII because it is the only action suited to abate the threat. Any additional security measures taken by LVHN would simply come too late as ALPHV already has Plaintiff's and Class Members' PHI and PII.

## VI. GRANTING THIS INJUNCTION WILL NOT HARM THE PUBLIC INTEREST

Finally, the Court must consider whether the public interest will be harmed if the injunction is granted. *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mountain*, 573 Pa. at 647. Here, there is no harm to the public interest if the injunction is granted. The protection of PHI and PPI is in everyone's best interest and requiring healthcare providers to put patient privacy above its own financial interest is in the public interest. This injunction is not likely to harm the public interest. Rather this injunction, requiring LVHN to restore the status quo by protecting patient PHI and PII, would protect, rather than harm the public. *See SEIU Healthcare Pennsylvania v. Com.*, 104 A.3d 495, 509 (Pa. 2014).

## VII. LVHN SHOULD BE ORDERED TO COMPLY WITH THE DATA BREACH ACT

Despite hundreds, if not thousands of victims, there is no indication that LVHN has sent the requisite notices to those impacted. The Data Breach Act states as follows:

> An entity that maintains, stores or manages computerized data that includes personal information ***shall provide notice of any breach of the security of the system following discovery of the breach of the security of the system to any resident of this Commonwealth whose unencrypted and unredacted personal information was or is reasonably believed to have been accessed and acquired by an unauthorized person***. Except as provided in section 41 or in order to take any measures necessary to determine the scope of the breach and to restore the reasonable integrity of the data system, ***the notice shall be made without unreasonable delay***. For the

14

purpose of this section, a resident of this Commonwealth may be determined to be an individual whose principal mailing address, as reflected in the computerized data which is maintained, stored or managed by the entity, is in this Commonwealth.

73 P.S. § 2303 (emphasis added).

LVHN has been aware of the breach since as early as February 6, 2023. Yet, for some unknown reason, it has not acted to notify the hundreds, if not thousands, of victims so they can take steps to safeguard their privacy. The Court, as part of the injunction, should order LVHN to provide notice immediately.

## CONCLUSION

Plaintiff and Class Members have met their burden to prove the need for a preliminary injunction without a hearing. Accordingly, Plaintiff and Class Members respectfully request that the court grant their motion.

Dated: April __, 2023

By: _____
Todd J. O'Malley, Esq.
Mary Anne O. Lucas, Esq.
**O'MALLEY & LANGAN**
201 Franklin Avenue
Scranton, PA 18503
Tel: (570) 344-2667
Fax: (570) 344-6199
tomalley@omalleylangan.com
mlucas@omalleylangan.com

Simon B. Paris, Esq.
Patrick Howard, Esq. (PA ID #88572)
**SALTZ, MONGELUZZI, & BENDESKY, P.C.**
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Tel: (215) 496-8282
Fax: (215) 496-0999
phoward@smbb.com